UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

TRANSCLICK, INC.,

    Plaintiff,

    -v-                                                               No. 11 Civ. 8171 (LTS)

RANTNETWORK, INC. et al.,

    Defendants.

-------------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiff Transclick, Inc. ("Plaintiff" or "Transclick") sues Defendants Rantnetwork, Inc., Appletworks, Neven Boyanov Boyanov, Interlecta, Frank Edward Fleming ("Fleming"), Edward Cavazos ("Cavazos"), and C&A Inc.,[1] seeking injunctive relief and damages in connection with a number of claims, including enforcement of covenants not to compete and not to solicit, breach of fiduciary duty, breach of employment agreement, misappropriation of trade secrets, unfair business practices, civil conspiracy, patent infringement, and copyright infringement. Cavazos and Fleming (collectively, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(5), to dismiss Plaintiff's claims for insufficient service of process. Cavazos also moves, alternatively, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss Plaintiff's claims for lack of personal jurisdiction and improper venue. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

---

[1]     Plaintiff has settled its claims against five additional defendants. See infra Note 4 and accompanying text.

The Court has reviewed thoroughly all of the parties' submissions and arguments. For the following reasons, the Court grants Defendants' motions to dismiss the Complaint.

BACKGROUND[2]

Plaintiff initiated this action on November 14, 2011 and, on April, 10, 2012, sent a letter to the Court explaining that Plaintiff could not effectuate traditional service of process because Plaintiff could not locate Defendants' mailing address through "FOIA requests to the U.S. Post Office and wide ranging computer searches." (Docket Entry No. 10.) Plaintiff requested permission from the Court to effectuate alternative service through "'R-Post', a company that serves legal documents through certified e-mail." (Id.) On April 17, 2012, the Court issue an order directing Plaintiff to file additional information regarding the necessity of alternative service.[3] (Docket Entry No. 9.) Plaintiff, in a letter dated May 3, 2012, submitted to the Court, as proof of its attempts to serve Defendants, copies of letters sent to the Postmasters of California and New York as well as a letter from Plaintiff's process server stating that it could not locate Defendants. At a status conference, on May 11, 2012, the Court considered Plaintiff's request for approval of alternative service and directed Plaintiff to file a renewed request for alternative service with supplementary information, including the availability of proof that any R-Post email was actually opened, not just that it was received by a computer server.

---

[2]  The Court begins with the procedural history of this case as it is most relevant to the facts of the instant motions.

[3]  Plaintiff was directed to file: "(1) documentation of its efforts to serve the summons and complaint on [Defendants] thus far; (2) evidence that the email addresses by which Plaintiff seeks to serve the summons and complaint constitute means reasonably calculated to apprise the defendants of the action brought against them; and (3) an explanation of the certified email process and how it differs from regular email."

On September 28, 2012, Plaintiff reached a settlement with Defendants Optimum Consulting Group, Ltd., Estate of William J. Grandizio, Elisa R. Grandizio, Rantnetwork, Inc., and Kenneth E. Volet, and this action was terminated. (See Docket Entry Nos. 42, 46.) However, on December 20, 2012, Plaintiff requested that the Court restore this action against Defendants Appletworks, Neven Boyanov Boyanov, Interlecta, Frank Edward Fleming, Edward Cavazos, C & A Inc., and Fred Schnurr.[4] (Docket Entry No. 45.) By endorsed Order dated December, 21, 2012, the Court restored this action as against those defendants, but ordered that Plaintiff file proof of service against each remaining Defendant by February 8, 2013, or the action against them would be dismissed without prejudice. (Id.) On January 13, 2013, Plaintiff sent a letter to the Court representing that it had properly served Defendants Cavazos and Fleming in accordance with the direction given by the Court at the May 11, 2012, conference. (Docket Entry No. 47.) The Court accepted the letter and attachments as certification of service on these Defendants. (Id.)[5]

Plaintiff is a Delaware wireless and PC based web services and social mobile infrastructure company with its corporate headquarters in New York. (Compl. ¶ 1.) In the Complaint, Plaintiff asserts that it employed Fleming as Vice President of Business Development from September 2006 until April 2007, when Fleming co-founded Interlecta, LLC, another software, network access, and mobile services company. (Id. ¶¶ 2, 14.) Plaintiff alleges that Fleming misappropriated Transclick's technology by integrating proprietary codes

---

[4]   Fred Schnurr later reached a settlement with Plaintiff on May 6, 2013, and the action was dismissed with prejudice as against Defendant Schnurr. (Docket Entry No. 67.)

[5]   No proof of service has ever been filed with respect to Defendants Appletworks, Neven Boyanov Boyanov, Interlecta, and C&A, Inc. Accordingly, this action will be dismissed as against them, without prejudice.

developed for and owned by Plaintiff.  (Id. ¶ 14.)  Fleming, Plaintiff further contends, currently offers Plaintiff's real-time machine translation technology on the open market for his own pecuniary gain.  (Id.)

According to the Complaint, Plaintiff employed Cavazos as Executive Vice President of Global Sales of Plaintiff from July 19, 2005, until December 20, 2005.  (Id. ¶ 17.)  Plaintiff asserts that Cavazos signed a confidentiality agreement and an employment agreement that contained non-competition and confidentiality provisions (collectively, the "Employment Agreements") on July 19, 2005.  (Id. ¶¶ 17, 85.)  In December 2005, Cavazos left Transclick and began employment at Telelanguage.  (Id. ¶ 91.)  At Telelanguage, Plaintiff alleges, Cavazos misappropriated Transclick's real-time machine translation technology and marketed the technology through Rantnetwork, a Pennsylvania-based company.  (Id. ¶¶ 2, 91.)  According to Plaintiff, in violation of provisions in the Employment Agreements with Transclick, Cavazos also arranged and caused a license agreement to be executed between Telelanguage and LEC Corporation, a machine translation licensing company, and shared the licensing key with Rantnetwork and Neven Boyanov Boyanov.  (Id.)  Plaintiff alleges that, as a result of Cavazos' conduct, it has been irreparably harmed and is unable to protect its business proprietary information and to fairly compete in the market.  (Id. ¶¶ 93, 94.)

Plaintiff brings this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332, seeking injunctive relief and damages.  Plaintiff asserts the following contract-based claims against Cavazos: Enforcement of Covenants to Not Compete and to Not Solicit (Count 1), Enforcement of Covenants Not to Compete and Not to Solicit (Count 4), and Breach of Employment Agreement (Count 12).  (Id. ¶¶ 102-15, 112-14, 144-48.)  Plaintiff also asserts the following tort claims against Cavazos: Breach of Fiduciary Duty (Count 8), Misappropriation of Trade Secrets

(Count 21), Unfair Business Practices (Count 22), Civil Conspiracy (Counts 23), Patent Infringement of United States Patent No. 6.996.520 (Counts 25 to 29), and Copyright Infringement Under 17 U.S.C. § 101 (Count 30).  (Id. ¶¶ 127-32, 163-69, 170-78, 179-82, 188-224, 225-34.)  Plaintiff asserts substantially the same contract and tort claims against Fleming. (Id. ¶¶ 109-11, 121-26, 139-43,170-78, 179-82, 188-224, 225-34.)

## DISCUSSION

Service of Process on Defendants

"'[I]n considering a motion to dismiss pursuant to [Rule] 12(b)(5) for insufficiency of [service of] process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.'" Koulkina v. City of New York, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008) (quoting Darden v. DaimlerChrystler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)).  "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'" Id. (quoting Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." McNulty v. Yaneka, No. 11 Civ. 8320(ER), 2013 WL 684448, at *3 (S.D.N.Y. Feb, 25, 2013).  Where process or service of process is insufficient, "[t]he courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." Montalbano v. Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir. 1985) (alteration in original) (citation omitted).

Federal Rule of Civil Procedure 4(e)(1) provides that service of process may be accomplished in accordance with "state law for serving a summons in an action brought in courts

of general jurisdiction in the state where the district court is located or where service is made." New York law provides a number of specific methods for serving individuals, and further provides that service may be effectuated "in such manner as the court, upon motion without notice, directs, if service is impracticable" under the other specified methods of service. N.Y. C.P.L.R. § 308(5) (McKinney 2010). The meaning of "impracticable" depends on the facts and circumstances of a particular case. Markoff v. South Nassau Community Hosp., 458 N.Y.S.2d 672 (App. Div. 2d Dep't 1983). "In general, the plaintiff 'must make some showing that the other prescribed methods of service could not be made.'" Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 112 (S.D.N.Y. 2010) (quoting SEC v. Nnebe, No. 01 Civ. 5247(KMW)(KNF), 2003 WL 402377, at *3-4 (S.D.N.Y. Feb. 21, 2003)).

  Defendants argue that approval of Plaintiff's alternative service of process via R-post email was improperly obtained pursuant to N.Y. C.P.L.R. Section 308(5) because Plaintiff failed to adequately show that other prescribed methods of service were impracticable. The use of alternative service is improper where a plaintiff could have located a defendant's address with "minimal effort . . . thereby permitting service without difficulty." Hitchcock v. Pyramid Centers of Empire State Co., 542 N.Y.S.2d 813, 814 (App. Div. 3d Dep't 1989). In his sworn affidavit in support of his dismissal motion, Cavazos demonstrates that his residential address could easily have been located via a basic, no-cost internet search at the time Plaintiff made its ex parte request to use alterative service of process.[6] Fleming, in his affidavit, states "I have made no attempt to conceal my whereabouts or present address, and my current address is easily

---

[6]  Copies of web-page screenshots that demonstrate that Plaintiff could have obtained his mailing addresses through www.whitepages.com are annexed to Cavazos' affidavit. (Cavazos Aff. ¶ 8-12.)

and publically available to anyone who could conduct even the most basic search for me." (Fleming Aff. ¶ 10.) Plaintiff's representations regarding impracticality, in its original and supplemental applications, had been limited to conclusory assertions about difficulty and exemplars of letters written to local postmasters requesting residential addresses. In light of the demonstrated accessibility of information on the internet, Plaintiff's demonstration of impracticability was insufficient. Defendants' submission further makes clear that the service Plaintiff asked the Court to approve following the reinstatement of the case, as compliant with the Court's May 2012 direction, had been made before Plaintiff had ever sought authorization for email service and consisted of email messages with cryptic subject lines that did not indicate that service of process was being made or, indeed, that the emails related to legal matters at all. (See Docket Entry No. 47; Cavazos Aff. ¶¶ 4-5; Fleming Aff. ¶¶ 7-8; Fleming Ex. B, C.)

Accordingly, and in light of the information proffered by Defendants, the Court vacates its February 1, 2013, order approving the prior service upon Defendants. (Docket Entry No. 47.) Plaintiff will be given one final opportunity to effectuate service, by traditional means, upon defendant Fleming. Such service must be accomplished, and proof thereof filed with the Court, within 45 days of the date of this Memorandum Order.

As explained below, Plaintiff has failed to demonstrate that there is a proper basis for this Court's exercise of personal jurisdiction over defendant Cavazos. Accordingly, the action will be dismissed as against Cavazos, without prejudice to litigation in a proper forum.

Personal Jurisdiction Over Cavazos

The plaintiff bears the burden of establishing the court's personal jurisdiction over a particular defendant.  See Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010).  On a Rule 12(b)(2) motion, the plaintiff must make a prima facie showing that jurisdiction exists.  Id. at 34-35.  Prior to discovery on jurisdictional issues,"[t]his showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted).  The court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor."  Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008).  "However, conclusory allegations are not enough to establish personal jurisdiction."  Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (citation and internal quotation marks omitted), aff'd, 355 F.3d 206 (2d Cir. 2004); see also, Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5663(MBM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (holding that a plaintiff cannot rely on conclusory statements or allegations in opposing a 12(b)(2) motion; rather, the prima facie showing must be "factually supported").

Plaintiff asserts that the Court may properly exercise jurisdiction over Cavazos with respect to all of Plaintiff's claims pursuant to Section 302(a)(1) of New York's long-arm statute,[7] which authorizes the exercise of jurisdiction over one who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1) (McKinney 2010).  Under New York law, a non-domiciliary is subject to jurisdiction

---

[7]  Plaintiff does not assert that the Court has "general jurisdiction," pursuant to N.Y. C.P.L.R. § 301, over Cavazos.

in New York if it transacts any business within the state and the transaction has a substantial nexus to the cause of action.  See id.; Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d. Cir. 1996).  "In diversity actions, the extent of the Court's personal jurisdiction is governed by New York law, as circumscribed by the Due Process Clause of the United States Constitution."  Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Massachusetts, Inc., 42 F. Supp. 2d 327, 330-31 (S.D.N.Y. 1999).  Additionally, "[i]n a federal question case where the defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules."  Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988(GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (quoting PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)).  Thus, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a court has personal jurisdiction over a defendant so long as New York State courts would have personal jurisdiction.  The exercise of long-arm jurisdiction over Defendants must also satisfy constitutional due process standards, but "satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements."  Sirius Am. Ins. Co. v. SCPIE Indem. Co., 461 F. Supp. 2d 155, 164 (S.D.N.Y. 2006).

        To determine whether a party in a contract action has "transacted business" within the meaning of Section 302(a)(1), courts consider, among other things, the following factors: (1) whether the contract was negotiated and executed in New York, and whether the defendant visited New York for the purpose of meeting with the parties after the contract had been executed; (2) whether the contract contains a New York choice-of-law clause; (3) whether the contract requires notices and payments to be sent to New York; and (4) defendant's physical presence in New York in connection with an ongoing contractual relationship with a New York corporation.  Agency Rent A Car, 98 F.3d at 29.  "[A]t a minimum, a defendant who 'transacts

business' in New York must 'purposefully avail[] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" SAS Group, Inc.v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (citing McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377 (N.Y. 1967)).  The ultimate conclusion should be based on the totality of the circumstances.  See Agency Rent A Car, 98 F.3d at 29; Snyder v. Madera Broadcasting, Inc., 872 F. Supp. 1191, 1194 (E.D.N.Y. 1995).

The Complaint alleges generally that "Cavazos' employment agreement was entered into and performed in New York." (Compl. ¶ 87.)  The Complaint provides no factual detail to elucidate this assertion.  The Complaint does not describe the circumstances surrounding the Employment Agreements' negotiation, execution or performance.  Standing on its own, such a statement is "is far too conclusory and nonspecific to make out a prima facie case of contacts between" Cavazos and New York.  Doe v. Delaware State Police, No. 10 Civ. 3003(KMK), 2013 WL 1431526, at *13 (S.D.N.Y. Apr. 4, 2013).  Plaintiff also submits a declaration made by its C.E.O. to demonstrate the jurisdiction is proper under Section 302(a)(1), which states that:

> In May of 2005, I met in New York City with Edward Cavazos to discuss the terms of his employment for my company Transclick.  At that meeting, we discussed the terms [of] the non-compete-non-disclosure and employment contracts and Cavazos agreed to their terms.  The contracts were subsequently executed in California.

(Levin Decl. at ¶ 2.)  Even when viewing this statement in the light most favorable to Plaintiff, it alleges only that the negotiation of some or all of the terms of the Employment Agreements began in New York; but that the Employment Agreements were executed in California; it is silent as to whether Cavazos ever returned to New York after the May, 2005, visit.  C.f. Ross v. Thomas, No. 09 Civ. 5631(SAS), 2009 WL 3698024, at *4 (S.D.N.Y. Nov. 5, 2009) (finding

personal jurisdiction when there was a lengthy, "ongoing contractual relationship" between the parties prior to the disputed agreement and "frequent electronic, facsimile, and telephone contacts with New York" by the defendant).  "New York courts have held . . . that . . . exploratory meetings taking place in New York, 'leading to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York,' are not sufficient contacts to constitute the transaction of business within the meaning of CPLR 302(a)(1)."  V Cars, LLC v. Israel Corp., 902 F. Supp. 2d 349, 361 (S.D.N.Y. 2012).  In its opposition brief, Plaintiff further asserts that Cavazos made calls to Plaintiff in New York in an effort to curry favor with Plaintiff, prior to executing the contract.  The Court disregards these unsworn proffers in evaluating the motion and notes that, in any event, they add nothing to the record that suggests performance of the contractual relationship in New York or any geographical nexus between Cavazos' post-Transclick activity and New York.

To determine whether the Court has personal jurisdiction over Cavazos with regards to Plaintiff's contract claims, the Court considers the four factors outlined by the Second Circuit in Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.  As to the first factor, although Plaintiff alleges that some negotiations took place in New York, Plaintiff acknowledges that the contract was executed in California, and makes no proffer concerning post-contract dealings in New York.  This factor does not, accordingly, favor a finding that Cavazos transacted business in New York in a manner sufficient to anchor Plaintiff's causes of action here for long-arm purposes.  With respect to the second factor, the Employment Agreements contain New York choice-of-law clauses.  However, the "[e]xistence of New York choice of law clause in contract [is] . . . not sufficient standing alone to confer personal jurisdiction[.]"  Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd., 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997), rev'd on other

grounds, 186 F.3d 210 (2d Cir. 1999).  Accordingly, the second factor weighs in favor of personal jurisdiction but is not sufficiently strong to carry the issue.  The third factor queries whether notices and payments under the contract are to be sent to New York, and the fourth factor looks to whether the defendant was physically present in New York in connection with an ongoing relationship with a New York corporation.  Plaintiff has proffered no evidence indicative of activity satisfying these factors.  The Employment Agreements do not require Cavazos to either send notices or payments to New York or he maintain a physical presence in New York.  The employment agreement lacks any reference to whether Cavazos' performance of the employment agreement was to take place in New York, and Plaintiff has proffered no evidence concerning the place in which Cavazos performed any relevant post-contract activities.  Cavazos, on the other hand, has proffered an affidavit in which he denies having performed any work for Transclick in New York, and represents that his subsequent work activities have been performed in California.  (Cavazos Aff. ¶¶ 12-18.)  Accordingly, the third and fourth factors weigh against the existence of personal jurisdiction over Cavazos.  C.f. RF Int'l, Ltd. v. Lion Metals, Inc., No. 10 Civ. 1108(ADS)(AKT), 2010 WL 5115179, at *3-4 (E.D.N.Y. Dec. 10, 2010) (finding the third and fourth factors to weigh in favor of exercising personal jurisdiction when, the defendant, respectively, "was obligated to make its payments to [the plaintiff] in New York" and made "regular visits to New York . . . during . . . the parties' business relationship").

       Plaintiff's Complaint and declaration are insufficient to support a finding that Cavazos, by entering the Employment Agreements, purposely availed himself of the privilege of conducting activities within New York.  Accordingly, Plaintiff has failed to establish a prima facie showing that Cavazos has transacted business in New York within the meaning of Section

302(a)(1), and the Court does not have personal jurisdiction over Cavazos with respect to Plaintiff's contract claims.

As for long-arm jurisdiction in connection with Plantiff's tort claims, Section 302(a)(3)(ii) of the C.P.L.R. requires a plaintiff to proffer facts demonstrating that the defendant committed a tortious act outside the state of New York that caused injury to a person or property within New York and that the defendant expected or should have reasonably expected the tortious act to have consequences in New York and derived substantial revenue from interstate or international commerce.  N.Y. C.P.L.R. § 302(a)(3)(ii).[8]  "It is firmly established that the domicile or residence of an injured party within New York is not enough to establish personal jurisdiction-rather, a more direct injury must have occurred within New York State."  Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008).  The plaintiff must show harm in the New York market, for example, by showing lost sales or customers inside New York.  Compare Fantis Foods, Inc.v. Standard Importing Co., 49 N.Y.2d 317, 324-27 (N.Y. 1980).

Plaintiff's Complaint and declaration fail to allege facts demonstrating that Cavazos' alleged tortious acts caused harm to Plaintiff within New York.  Plaintiff merely asserts, with regard to its Breach of Fiduciary Duty, Misappropriation of Trade Secrets, Unfair Business Practices, and Civil Conspiracy claims, that Plaintiff "has suffered damages, including . . . lost profits and loss of reputation in the software and communication industry."  (Compl. ¶

---

[8] Plaintiff has not proffered sufficient facts to show that its tort claims are substantially related to any acts that occurred in New York (i.e. Defendants' business transactions or contracts to supply goods or services in the state).  Accordingly, section 302(a)(1) would not support an exercise of personal jurisdiction with regard to Plaintiff's tort claims.

131, 168, 177, 181.)  Plaintiff similarly alleges that it "has suffered and will continue to suffer serious irreparable injury" in connection with its Patent Infringement claims.  (Id. ¶ 195, 201, 212, 218, 224.)  And as to its Copyright Infringement claim, Plaintiff simply alleges that Cavazos has "caus[ed] irreparable damage to [Plaintiff] and its brand for innovation."  (Id. ¶ 233.)  There is no allegation that Cavazos' acts caused harm to Plaintiff in New York.  Plaintiff fails to meet its burden of showing injury within the state.  Accordingly, the Court does not have personal jurisdiction over Cavazos in connection with Plaintiff's tort claims.

Because the Court finds it does not have personal jurisdiction over Cavazos, it need not address Cavazos' argument regarding venue.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint are granted to the extent that all of Plaintiffs' claims against Defendant Cavazos are dismissed for improper service and lack of personal jurisdiction, and Plaintiff is ordered to serve Defendant Fleming properly in accordance with a method authorized by the N.Y. C.P.L.R. and/or Rule 4 of the Federal Rules of Civil Procedure and file proof of such service within 45 days from the date hereof.  The Court's February 1, 2013, endorsed order accepting certification of email service on Fleming and Cavazos (Docket Entry No. 47) is vacated.

If no proof of proper service is timely filed, Plaintiff's claims against Fleming will be dismissed without prejudice.  Plaintiff's claims against Defendants Appletworks, Neven Boyanov Boyanov, Interlecta, and C&A Inc. are dismissed without prejudice, for failure to file timely proof of service.

This Memorandum Order resolves docket entry numbers 54 and 62.

SO ORDERED.

Dated: New York, New York
       August 7, 2013

                                          /S/
                                     LAURA TAYLOR SWAIN
                                     United States District Judge